LAW OFFICES OF
**DONNA R. NEWMAN**
ATTORNEY AT LAW
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007
TEL. 212-229-1516
FAX 212-676-7497
DONNANEWMANLAW@AOL.COM
MEMBER: N.Y. & N.J. BAR

November 18, 2021

Via Email and ECF

The Honorable Liman
United States District Court Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*The Government is ordered to respond to this letter by November 23, 2021 at 5:00PM.*

11/19/2021   SO ORDERED.

LEWIS J. LIMAN
United States District Judge

Re: *United States v. Amin Butler*
     21 cr 621(LJL), 21 MJ 5137

Dear Judge Liman:

I represent Amin Butler in the above referenced case. I come before the Court seeking pretrial bond for Mr. Butler or a temporary bond allowing him to be released to obtain the necessary medical treatment that he is not receiving at the MDC. We offer a package of $70,000 secured by two financially responsible suretors, one of whom would be his mother, who would also act as the third-party custodian, and home detention with electronic monitoring.

In the alternative, we seek an Order compelling the Bureau of Prisons ("BOP") to transfer Mr. Butler to a medical facility, e.g., FMC Devens in Ayers, Massachusetts. Alternatively, I seek an Order compelling the Metropolitan Detention Center ("MDC"), where Mr. Butler is detained without bond, to: (1) arrange within five days of the date of the Order, for a certified wound care specialist[1] to examine and treat Mr. Butler's wounds until such time as the wound care specialist

---

[1] Mr. Butler's left foot is amputated below the knee and his stump since his detention at the MDC has developed open wounds/lesions. For over a month, Mr. Butler's stump has had three persistent wounds that are not improving. He has been primarily treating these wounds himself with only once a week examination by a medical staff member. He is not being treated by a wound care specialist. See Discussion below.

Wound care specialist are nurses, physicians, physical therapist, who after three years of experience in wound care have passed a written examination to prove their specialized knowledge and competence. To maintain their wound care specialist status, continuing education credits and periodic re-certification testing is required. When conventional wound therapies fail

determines that Mr. Butler's wounds are medically resolved and specialized treatment is not necessary; (2) provide Mr. Butler with a CPAP machine (sleep apnea machine) with an extension cord that reaches a workable outlet; (3) provide for weekly examination of Mr. Butler by a physician; (4) provide Mr. Butler with access to a handicap accessible shower as per the criteria of the Americans with Disability Act; (5) and provide Mr. Butler with a prosthetic leg and orthopedic shoes/sneakers with orthotic innersoles within ten days of the date of this order. Since orders with similar direction to the MDC were entered by Magistrate Judge Lehrburger and ignored by the MDC (see, e.g., 21 MJ 5137 ("MJ") Dkt #'s.4, 5,14), if the MDC fails to comply with the Court's Order, I ask the Court to hold the MDC in contempt.

## BACKGROUND

### PENDING CHARGES

Mr. Butler was arrested on May 13, 2021, and charged by Complaint with distributing and possessing with the intent to distribute 1 kilogram of a substance containing fentanyl and heroin in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B). *See* MJ Dkt. #1 Mr. Butler appeared before Your Honor on October 12, 2021, waived Indictment, and pled not guilty to an Information charging him with the distribution of 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21 United State Code Section 841(b)(1)(A). See 21-Cr-00621 Dkt. 28. He has been detained since his arrest at the MDC.

### MR. BUTLER SUFFERS FROM NUMEORUS LIFE THREATENING DISEASES

Mr. Butler is a 48-year-old amputee (left foot amputated below knee due to an infection) who suffers from obesity, Type II Diabetes, high blood pressure, high cholesterol, Glaucoma, depression, anxiety, sleep apnea, and a rare blood disease that causes his blood to clot. He has nerve damage in his vertebra and has undergone two back surgeries. The following is a list of medications he took daily prior to his arrest or devices he used daily: Pro Comfort Lancet, Diclofenac Sodium Tropical Gel, Amitriptyline HCL, Lisinopril, Cilostazol, Jardiance, Atorvastatin Calcic, Metformin, Baclofen, Amlodipine Besylat, Warfarin sodium, One Touch Ultra, Latanoprost, Lancel pro comfort, and East Mini Eject Lancing devices. Mr. Butler entered the MDC with a prosthetic leg. See Exhibit A, Medical Records[2], 5/15/2021 pg. 4 (listing medications Mr. Butler was prescribed); 5/19/2021 pg. 1 (describing medical history).

---

and a wound threatens the surrounding tissue, the specialist or team of specialists, add new therapies to the treatment plan. This can include treatment such as the hyperbaric oxygen chamber to aid the healing process. See, https://www.woundcarecenters.org/article/living-with-wounds/wound-specialists-how-they-are-different

[2] Exhibit A is not being filed on the public docket due to the nature of the document.

## THE HISTORY OF MDC'S TREATMENT OF MR. BUTLER REVEALS THEIR REFUSAL OR INABILTY TO PROVIDE MR. BUTLER WITH NEEDED MEDICAL TREATMENT

Mr. Butler arrived at the MDC on May 14, 2021. *Id.* at 5/19/2021 pg. 1. He came with his prosthetic leg. At his first meeting with Dr. Bialor, the MDC physician, he complained that he was experiencing pain in his right knee and lower back because he was wearing institutional sneakers (as opposed to his prosthetic sneakers and innersoles which he used when at home). *Id* at 5/19/2021 pg. 1. He also arrived at the MDC with his CPAP (needed to sleep because of his sleep apnea) but the MDC lost the machine. *Id.* Six days later, Mr. Butler was given a CPAP machine but without an extension cord, rendering the machine useless. See, *Id*. at 5/25/ 2021, pg. 1. When he came to the MDC, he had no wounds on his stump. *Id*. at 5/15/2021, pg. 5.

From the date of his entrance into the MDC, Mr. Butler sought to have the MDC allow him to have his orthotic sneakers and innersoles from home but the MDC administrative staff—not the medical staff—determined that prosthetic sneakers and innersoles were not necessary for Mr. Butler.  He repeatedly expressed frustration with the MDC for their refusal to deny him his prosthetic sneakers and innersoles and at being forced to wear thin commissary sneakers, which caused him to put undue stress on his stump and his right hip. See e.g., *Id* at 7/15/2021 pg. 1 (Mr. Butler explained his increased pain to Dr. Bialor: "overall pain has 'gotten worse'"); 8/13/2021, pg. 1. (Mr. Butler tells Dr. Bialor he is experiencing extreme pain and his pain now includes pain in his stump, hip pain, lower back pain, neck pain and has developed a wound on his stump. He expressed his "frustration about not having sneakers and custom-fitted orthotics from home.").

Not surprisingly, less than two months after his arrival at the MDC, Dr. Bialor on July 8, 2021, reported that Mr. Butler's had abrasions on the posterior and lateral aspect of the stump. *Id.* 7/08/2021 at pg. 2. Mr. Butler explained that the lesions were due to his imbalance in hips caused by uneven gait by his ill-fitting prosthetics and requested a walker. *Id.* at pg. 1. Dr. Bialor requested Mr. Butler be seen by a specialist for evaluation for fitting for prosthetics and orthotics. *Id.* ("Please evaluate for custom-fitted shoes, inserts, and/or orthotics. Also please evaluate prosthesis for possible adjustment or replacement."). Because of the open wounds on his stump, Mr. Butler's prosthetic leg was taken from him. At first, he was given crutches, then a walker, and then a wheelchair. He has been wheelchair bound ever since.

With respect to the stump wounds, Dr. Bialor noted in his report of August 13th the following:

> Given the issues with pain control and the new stump wound, I offered him the option of admission to KJMC Rehab. He was uncertain, he knows I can't tell him when he'd go. Depending on how he responds to Wound Care, this may affect decision-making. Was given a wheeled walker temporarily, till orthotics are brought to him, then walker can be taken away. *Id.*8/13/2021 pg. 2.

A week later, on August 20th, Dr. Bialor reported that Mr. Butler had two new abrasions on the medial aspect of his left leg, proximal to stump. *Id.* at 1. Only three days later, Nurse Lydia Ortiz indicated that the stump wound had closed completely but also noted the "area to right medial/lateral aspect of stump with deterioration of skin integrity." *Id.* at 8/23/2021. Pg. 1. On August 30, Nurse Ortiz reported that even the open area to the right inner medial aspect of the stump was significantly improved. *Id.* 8/30/2021 pg. 1. Less than a week later, on September 6th, Nurse Ortiz discontinued wound care for Mr. Butler, indicating it was no longer indicated. *Id.* at 9/06/2021 pg. 1.

Then on September 10th, Mr. Butler fell in the shower. *Id.* 9/10/2021, pg. 1 He hurt his left side, including his left neck, down his back and reported numbness and tingling in his hands. See *Id.* 9/15/2021, pg. 1. A CT scan and X-Rays did not reveal any broken bones or any permanent injury. Oddly, there is a notation on the September 15th report of Mr. Butler's fall, *that the left leg wound is improving, although, on September 6, Nurse Ortiz reported Mr. Butler's wounds were all resolved. Id. at 9/06/2021 pg. 1 (emphasis added), see above.*

On September 17th, Mr. Butler was taken to see a Prosthetist/Orthotist -which was more than two months after Dr. Bialor recommended that Mr. Butler be seen by this specialist for fitting of orthotics. See *Id.* 7/15/2211 pg. 2; 9/27/2021, pg. 1.

On October 6, 2021, Mr. Butler again fell in the shower. At this time, he hurt his right side. MRI and CT scans revealed no acute spinal injury but did note a moderate right C5-C6 foraminal compromise. It is not clear whether this was due to the fall. See *Id* at 10/14/2021 pg. 1.

On October 17th, Nurse Ortiz reported two wounds on his stump-one on Mr. Butler's inner left thigh measuring 1cm x 1 cm and another on the outer left thigh measuring 5cm. *Id.* 10/17/2021 pg. 1. She further described these wounds as pink/red granulation tissue.[3] *Id.* Nurse Ortiz reported the inner thigh, the one measuring 5cm had increased drainage and indicated there may be tunneling[4]. *Id.* 10/24/2021, pg. 1. By October 31, 2021, Mr. Butler had another new

---

[3] Pink tissue is a variation of granulation tissue called hypertrophic tissue. Granulation tissue is the tissue filling in the wound. Hypertrophic tissue is wound that is desperately trying to heal. "but something is standing in the way. It indicates poor perfusion and often is caused by pressure, poor circulation, trauma, or infection. If you observe this, it is important to assess for these factors because the wound is unlikely to improve until these issues are corrected." https://www.woundsource.com/blog/getting-know-granulation-tissue-and-what-it-means-wound-care.

[4] "Tunnels underneath the skin's surface means the wound isn't healing well. It indicates that the tissue is being damaged. https://www.healthline.com/health/tunneling-wound. "Tunneling wounds require careful treatment to prevent them from going deeper and to stop new tunnels from forming. Otherwise, more tissue will be destroyed, and infection can spread, leading to further complications. They can even become life threatening. This type of wound must be monitored until it's fully healed." "These types of wounds do not respond to mainstream wound

wound- a skin tear to the inner thigh measuring 3.5cm x 2cm. Nurse Ortiz noted the other wounds' appearance: partial thickness, serous drainage, scant amount of drainage. *Id.* at 10/31/2021.[5]

Currently, Mr. Butler reports that three wounds on his stump remain, and one is oozing. He does have his CPAP machine with an extension cord, but the socket is not working and thus, the CPAP machine is still unusable. Other than once a week visit with a member of the medical staff; Mr. Butler is responsible for the treatment and cleansing of his wounds. See generally Exhibit A. Such care is extremely difficult for him because of his girth and his limited ability to reach his stump. There is also the sheer embarrassment of having to reveal his open stump wounds in front of his cellmates at the MDC, who are repulsed by the sight of his stump and the wounds. He still does not have a prosthetic leg, nor does he have orthopedic sneakers or orthotic innersoles. Mr. Butler twice has fallen in the shower. None of the showers have sufficient space for Mr. Butler to safely transfer from his wheelchair to a seat in the shower and the only grab bar is in the front part of the shower. Despite his having informed them of his pain, the MDC has reduced his pain medication. He has not seen the doctor for over a month.

## MDC HAS FAILED TO OBIDE BY COURT ORDERS WITH RESPECT TO MR. BUTLER'S CARE

At Mr. Butler's initial appearance on May 13, 2021, the Government sought detention and counsel argued for bond. Magistrate Judge Netburn granted the Government's application for detention. MJ Dkt. # 3; see also Dkt. # 6, Transcript of Bond Hearing ("Tr") DKt. # 6 at 7-10. However, Judge Netburn stated she might reconsider if Mr. Butler's mother would agree to be a third party suretor and Mr. Butler would reside at her home. See Tr at 28. [6] Judge Netburn's suggestion led counsel to request Pretrial Services to interview Mr. Butler's mother. Ms. Butler was found to be an acceptable third-party custodian but nonetheless, based on the allegations in the Complaint, Pretrial recommended detention. See Updated Pretrial Services Report at 2, 9[7].

Mr. Butler renewed his bond application adding to his proposed conditions his mother as third-party custodian and for him to reside with her. On May 20th, 2021, the parties appeared before Magistrate Judge Lehrburger for his consideration of Mr. Butler's renewed bond motion.

---

care treatments ad clinicians may need to create unique treatments for a tunneling wound." https://www.woundsource.com/blog/tunneling-wound-assessment-and-treatment

[5] Counsel only has medical reports through 11/1/2021.

[6] I note that Judge Netburn in denying bond stated her concerns were: (1) the quantity of narcotics Mr. Butler was alleged to have distributed; (2) and his statement to the confidential source about his possession of loaded firearms, and that he was trafficking in dangerous drugs from his home where his six-year-old son lived. Tr. at 1; see also 29. A search of his residence revealed neither guns nor drugs. His son did not live where Mr. Butler at the time of his arrest. No gun charges have been filed against Mr. Butler.

[7] Counsel was advised by Pretrial that when making its bond recommendation it does not take into consider a defendant's medical history or the hardship of detention.

MJ Dkt. # 4. Judge Lehrburger denied the application but issued the following Medical Attention Form to the Warden of MDC:

> Defendant shall be placed in the infirmary, monitored and treated for his many Medical issues. He must receive his medications in timely fashion. Daily medical reports must be provided to Gov't counsel. List of requisite medications and equipment are: Diclofenac Sodium Tropical Gel 1%, Amitriptyline HCL 25 mg, Lisinopril (30 qty), Cilostazol (60 qut), Jardiance (60 qty), Atorvastatin Calci (80mg), Metformin HCL (180 qty), Baclofen (90qty), amlodipine Besylat 5mg (80 qty), Cilostazol 50 mg (60 qty), Warfarin sodcum (30 qty), On Touch ultra (100 qty), Latanoprost 2.5, lancet pro comfort (100 qty), easy mini eject lancing device, Sleep apnea machine, orthopedic shoes. MJ Dkt. # 5.

Despite this clear directive by the Court to the MDC regarding Mr. Butler's treatment regime, the facility did not comply. He was not placed in a special medical unit; he was not seen weekly by the doctor; he was not receiving all his medication; and he did not receive his sleep apnea machine until May 19 and even then it was not usable because he was not given an extension cord. Exhibit A, 5/25/ 2021, pg. 1.

On July 2, 2021, due to MDC's continued failure to provide Mr. Butler with adequate medical treatment, Mr. Butler brought another motion for pretrial release. See MJ Dkt. # 9, see also MJ DKt # 11(Gov't opposition to motion); MJ Dkt # 13 (defense reply). Judge Lehrburger by Order dated July 20, 2021, denied Mr. Butler's application for bond (Dkt. # 14) but to address concerns regarding Mr. Butler's medical treatment he issued the following Order to the MDC:

1) Bureau of Prisons ("BOP") shall allow Mr. Butler to have sneakers and prosthetic innersoles provided by his family, so long as those items are screened and determined not to contain contraband.
2) BOP shall provide a means for Mr. Butler to use his sleep apnea machine such that he can sleep in his bed while the machine is plugged in and can be operated.
3) BOP shall ensure that Mr. Butler receives his medications as prescribed.
4) BOP shall ensure that a physician examines Mr. Butler's health on at least a weekly basis.
5) If BOP is not capable of complying with the foregoing requirements, then BOP shall so notify the Court within seven days of entry of this Order.
6) In the meantime, Pre-Trial Services ("PTS") shall provide an updated report to the Court and counsel (1) stating PTS's conclusion with respect to the suitability for the residence of Mr. Butler's mother for home confinement and GPS monitoring and, (2) advising whether PTS recommendations with respect to detention or release of Mr. Butler remains as before or otherwise modified. The Court requests that PTS provide the updated report within seven days of entry of this order.

See, MJ Dkt. # 14.

But Mr. Butler's medical treatment did not improve, and the Court's order was essentially ignored by the MDC. Another application for pretrial release was therein filed. See MJ Dkt. # 16. The Court responded by scheduling a telephone conference. MJ Dkt. # 17; see also MJ Dkt. # 18 (letter updating on medical treatment). On August 24th, Judge Lehrburger heard argument and testimony from MDC representatives. See MJ Dkt. # 27.

Mr. Butler, however, continued not to receive adequate medical treatment. Another bond motion was filed with the court on September 21, 2021. MJ Dkt #23 (Reconsideration of Pretrial Bond). That application was denied because Mr. Butler was to be fitted for a prosthetic leg and sneakers. MJ Dkt. # 24.

As discussed above, he still does not have his prosthetic leg, he is in a wheelchair, his pain medication has been reduced, and most serious, his wounds on the stump are deteriorating which puts in jeopardy the remainder of the left leg.

## CURRENT CONDITIONS AT THE MDC ARE DEPLORABLE

MDC is now overcrowded with the influx of the inmates from MCC. There is a shortage of MDC personnel including medical personnel.[8]  Covid has come back to MDC.[9]  Lockdowns over the last few months seem to be happening every day and last from a day or two to weeks. In late September of this year, the MDC shut off electricity due to scheduled maintenance for a nine-day period, locking down the institution during the entire period. The inmates were left literally in the dark, without running water, with toilets overflowing with sewage into the cells in which they were locked down, and without decent food. The only food provided was cold, soggy sandwiches.[10] Mr. Butler could not use his CPAP machine during the electrical shutdown. This caused him additional stress and anxiety. His being wheelchair bound make these lockdowns particularly difficult for him both emotionally and physically.

## MR. BUTLER HAS DEMONSTRATED A CHANGE IN CIRCUMSTANCES OF THE NATURE WARRANTING HIS PRETRIAL RELEASE AND/OR HIS TEMPORARY RELEASE

Mr. Butler is charged with an offense prescribed in the Controlled Substance Act for which a maximum term of imprisonment of ten years or more may be imposed and thus, under the Bail Reform Act there is a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" ("the presumption") 18 USC § 3142(e)(3). As discussed above, bond was denied in the first instance by Judge Netburn, who found that Mr. Butler had not overcome the presumption. See

---

[8] https://www.ny1.com/nyc/all-boroughs/inside-city-hall/2021/10/14/metropolitan-detentioncenter-in-brooklyn-nyc-reports-dangerous-conditions-david-patton-discussion# (Oct 13, 2021).

[9] In late October, the MDC had the fourth-highest number of COVID cases in the entire Bureau of Prisons system, with 9 new infections among inmates and 13 confirmed staff cases.

[10]   https://www.nydailynews.com/new-york/nyc-crime/ny-water-electricity-conditions-mdcbrooklyn-20211010-27q6mnw6jre4llsko6jbww4m74-story.html

7

MJ DKt. # 6 at 7-10. However, even where a Court finds the defendant has not overcome the presumption, a detention hearing may be reopened, and the defendant released upon the defendant's demonstrating a change in circumstances that previously did not exist. 18 U.S.C. § 3142(f)(2)(B). The new information must 1) have been unknown to the movant at the time of the hearing; and 2) have "a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community." *United States v. Watson*, 475 Fed. App'x 598, 600 (citing § 3142(f)(2)(B)). "In other words, the new information must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *Id.*

There is a change of Mr. Butler's circumstances. His health has deteriorated, his open stump wounds are not being properly treated and are not healing, endangering the stability of the remaining part of his left leg, and he is not receiving rehabilitation therapy (which will be essential when and if he receives his prosthetic leg. Mr. Butler's deteriorating health, the failure of MDC to administer appropriate pain medication, the failure of MDC to ensure that he will receive his prosthetic leg and orthotics, etc. are all new and urgent circumstances. Likewise, Mr. Butler's conditions of detention are incomprehensibly harsh. There is overcrowding, constant gang violence, lockdowns, lack of medical personal, inability to obtain commissary, are of which all more intolerable than when Mr. Butler originally entered the facility last summer, and I add, at a time when it appeared that COVID at the MDC was in decline as compared to now when it is on the rise. Mr. Butler in his current condition cannot pose a risk of flight, nor a danger to the community as he is essentially immobilized and must depend upon others to even go outside.

Finally, if the Court will not grant bond, the Court should consider granting Mr. Butler temporarily release to obtain the proper medical care. We oppose Mr. Butler being sent to the hospital without bond, because then, if he is admitted into the hospital, he will have his leg and hands cuffed to the bed. This is intolerable and punitive, if not cruel. However, if released on temporarily, he can obtain the necessary medical treatment and then reenter detention in improved medical condition. See 18 U.S.C. § 3142(i). In the alternative, he should be sent to a Bureau of Prisons hospital facility for care.

## CONCLUSION

For all these reasons, we respectfully submit Mr. Butler's conditions of detention are so onerous and his medical condition has deteriorated to such a degree that there exists a change in circumstances that warrant this Court to grant Mr. Butler bond as requested, even if only temporarily to allow him to obtain the necessary medical treatment. In the alternative, Mr. Butler seeks an Order directing the BOP to transfer him to a medical facility to enable him to obtain the medical treatment he needs. Failing that, the Court should order the MDC to comply with an order, which directs them to provide the requisite care as previously ordered and to submit a report at least every 5 days to the Court and to counsel confirming that Mr. Butler is being provided with that care.

Respectfully submitted,

/s/
Donna R. Newman
Enc.
Cc: AUSA Mitzi Steiner
    AUSA Samuel P. Rothschild
    Amin Butler via 1st class mail