```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/13/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
UNITED STATES OF AMERICA,                                          :
:
:
:
    -v-                                                            :    21-cr-00621 (LJL)
:
AMIN BUTLER,                                                       :    ORDER
:
        Defendant,                                                 :
:
:
:
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

    Defendant Amin Butler ("Mr. Butler") applies to the Court for an order making a recommendation to the Federal Bureau of Prisons that he be granted a furlough to be with his wife, Tanya Nash Butler ("Ms. Nash"), who suffers from Stage IV breast cancer that has spread through her body, to comfort her and to plan for the care and custody of Ms. Butler's ten-year-old son. Dkt. No. 94.

    Mr. Butler and Ms. Nash were married in 2021 but were together for approximately nine years. *Id.* at 2.[1] Ms. Nash has a ten-year-old son, with whom Mr. Butler has shared parenting responsibilities. *Id.* The father of the child and members of his family live in Florida and have not been involved in the son's life. *Id.* Mr. Butler has raised the child since he was one-year old and is the only father the child has known. *Id.* Ms. Nash is suffering from advanced breast cancer and undergoes treatment three days a week. *Id.* According to her doctor, she is in the final stages of the disease, with limited time to live. Dkt. No. 92. Mr. Butler desires to be with

---

[1] The Presentence Report reflects that Mr. Butler and Ms. Nash were married in 2017. Dkt. No. 81 ¶ 50. The difference is immaterial.

his wife to comfort her during her last days and to plan for the care and custody of their child. Dkt. No. 94. Mr. Butler has been incarcerated since his arrest on May 13, 2021; his release date is March 3, 2028. *Id.* If released on furlough, Mr. Butler would live with his wife and the child in the home of Mr. Butler's mother, where they previously resided. *Id.*; Dkt. No. 81 ¶ 51.

Section 3662(a) of Title 18 gives the Bureau of Prisons the authority to release a prisoner for a period not to exceed 30 days to visit a relative who is dying. In relevant part, the statute provides as follows:

> The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to —
> (a) visit a designated place for a period not to exceed thirty days, and then return to the same or another facility, for the purpose of —
> (1) visiting a relative who is dying.

18 U.S.C. § 3622(a).

The decision whether to grant a furlough under Section 3622 is committed to sole discretion of the BOP, *see United States v. Roberts*, 612 F. Supp. 3d 351, 356–57 (S.D.N.Y. 2020), and the Court recognizes that the decision whether to grant furlough is ultimately committed to the judgment of the BOP, *see* Dkt. No. 96. However, nothing "prevents this Court from recommending" that such temporary release would be appropriate. *United States v. Schaefer*, No. 07 Crim. 498 (LJL) (S.D.N.Y.), Doc. 73 at 4 (Apr. 6, 2020); *see Roberts*, 612 F. Supp.3d at 357; *United States v. Moseley*, 2020 WL 1911217, at *2 (S.D.N.Y. Apr. 20, 2020). While the BOP is best situated to determine whether Mr. Butler will honor the institution's trust and to evaluate the "prescribed conditions," the Court is well positioned to evaluate whether release on furlough would be consistent with the Court's sentence. It would be.

The Court recommends that Mr. Butler be granted a furlough. Mr. Butler pled guilty before me on September 27, 2022, to a charge of the distribution and possession with intent to distribute narcotics in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B) and 18 U.S.C. § 2. Dkt. No. 70. On September 11, 2023, I sentenced Mr. Butler to a term of imprisonment of 96 months. Dkt. No. 89. At the time, Mr. Butler expressed concern about the effect of a lengthy sentence on his wife, who was suffering from cancer, and on the care of her son with whom he shared parenting responsibilities. Dkt. No. 90 at 43 ("If I lose myself now, what my son gonna do? … My wife and me and my wife parent him, so it's just me and him"). The Court varied from the Sentencing Guidelines.

Mr. Butler's temporary release on furlough would not be inconsistent with the purpose for which the sentence was imposed. The sentence was driven principally by concerns of just punishment and general deterrence. Mr. Butler committed a "very serious" crime, *id.* at 45, and it was also important from a general deterrence perspective that Mr. Butler "receive a very lengthy term of imprisonment," *id.* at 48. Although the Court also concluded that incarceration was appropriate from the perspectives of specific deterrence and incapacitation, *id.* at 50, the Court recognized that Mr. Butler was "not a regular drug dealer," that many of his prior convictions were old, his challenges in adjusting to supervision also were old, and that there was "a seven-year gap of time between his last release from custody prior to this case and his commission of this offense, *id.* at 46, 48. In short, the Court did not then have a concern and does not now have a concern that the release of Mr. Butler to be with his dying wife for an extremely short period of time would undermine the public safety. If Mr. Butler is returned to prison after the furlough to serve the remainder of his sentence, the purposes for which the Court sentenced Mr. Butler will have been satisfied. The sentence was intended to impose just

punishment for the offense and to send a message of general deterrence while protecting the public. It was not intended to impose gratuitous harm on his wife and on the son. Indeed, in the Court's view, it would be inconsistent with the public interest to deprive the son of the assistance of Mr. Butler at a critical time in the son's life and during the last days of the mother's life.

For the same reasons, the Court itself has no concern that Mr. Butler will honor the trust reposed in him. Mr. Butler is an amputee who spent much of the time awaiting sentence being hospitalized. He was not a risk of flight. His crimes were the product, at least in part, of his drug addiction. There was no evidence that he participated in organized criminal activity, either in his offense of conviction (which involved the sale of narcotics to a confidential source) or in his extended criminal history. He apparently has a clean record in prison. It seems unlikely that he would revert to drug dealing during the brief period of a furlough. He engaged in the drug dealing that led to this conviction only after a lengthy respite from criminal activity.

In short, release on furlough would be compassionate and would be consistent with the Court's sentence.

SO ORDERED.

Dated: November 13, 2024
      New York, New York

                                           LEWIS J. LIMAN
                                      United States District Judge